**David FIERRO, et al., Plaintiffs,**

**v.**

**James GOMEZ, et al., Defendants.**

**No. C–92–1482 MHP.**

United States District Court,
N.D. California.

April 18, 1992.

Michael Laurence and Matthew A. Coles, American Civ. Liberties Union Foundation of Northern California, Inc., San Francisco, Cal., for plaintiffs.

Daniel E. Lungren, Atty. Gen. of the State of Cal., George Williamson, Chief Asst. Atty. Gen., Dane R. Gillette [Atty. of Record], Ronald S. Matthias, Karl S. Mayer, Paul D. Gifford, and Peter J. Siggins, Deputy Attys. Gen., San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

PATEL, District Judge.

The asserted plaintiff class consists of California state prisoners sentenced to death. They challenge the method of their future executions, asserting that death by lethal gas violates the Eighth Amendment's prohibition against cruel and unusual punishment. Plaintiffs seek a temporary restraining order ("TRO") preventing the executions of members of the plaintiff class by administration of lethal gas, the legally prescribed method in California, until this matter can be considered at a preliminary injunction hearing. After consideration of the submissions of the parties and the arguments put forth at the hearing of April 18, 1992 the court GRANTS plaintiffs' motion. This order incorporates by reference the rulings of the court made from the bench at the April 18, 1992 hearing.

1. Plaintiffs seek to represent all similarly situated death row inmates. The court will not decide the issue of class certification at this time. Neither class certification nor the consideration of issues unique to plaintiff Harris affect the balance of factors relating to the motion for the temporary restraining order.

DISCUSSION

The named plaintiffs, three death row inmates at San Quentin State Prison, bring their challenge to California's method of execution under 42 U.S.C. § 1983.[1] Defendants, James Gomez, individually and in his capacity as Director of the California Department of Corrections, and Daniel Vasquez, as an individual, and in his capacity as the Warden of San Quentin State Prison, oppose plaintiffs' motion on the grounds that (1) it should properly be characterized as a habeas corpus petition; (2) that the federal court abstention doctrine enunciated in *Younger v. Harris*, 401 U.S. 37, 45, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971), counsels against federal court intervention in this case; and (3) that plaintiffs cannot satisfy the TRO standards.

*I. Plaintiffs' Claim Can Properly be Brought under Section 1983*

 Section 1983 is the basis for most suits brought in federal court against local governments and against state and local government officers to redress violations of federal law. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) a violation of a right secured by the Constitution or federal laws; and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988). There is an exception to the general rule that section 1983 may be used to challenge the unconstitutionality of the actions of state officials. This exception involves challenges to the fact or duration of confinement, which must be brought by way of a petition for a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 489–90, 93 S.Ct. 1827, 1836–37, 36 L.Ed.2d 439 (1973).[2] Despite this exception, section 1983 is the basis for virtually all constitutional rulings involving the ac-

2. The Supreme Court has declined to address whether conditions of confinement claims may be brought under habeas. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 1867 n. 6, 60 L.Ed.2d 447 (1979).

tion of state and local officials. E. Chemerinsky, Federal Jurisdiction, at 371.

## A. *Federal Habeas Corpus Review*

■ Relying on *Preiser,* the Ninth Circuit's most recent pronouncement on the scope of habeas review states that "[w]here a state prisoner challenges the fact or duration of his confinement, his sole federal remedy is a writ of habeas corpus." *Young v. Kenny,* 907 F.2d 874, 875 (9th Cir.1990) (citing *Preiser,* 411 U.S. at 489–90, 93 S.Ct. at 1836). Release from confinement has also been an important defining criterion of a habeas case.[3] *Preiser,* 411 U.S. at 484, 93 S.Ct. at 1833 ("The essence of habeas corpus is an attack by the person in custody on the legality of custody, and that the traditional function of the writ is to secure release from illegal custody."); *see also Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 681 (9th Cir.1984) ("the exclusive federal remedy for a state prisoner seeking release from confinement is habeas corpus.") The *Young* court also stated that "[h]abeas must be the exclusive federal remedy not just when a state prisoner *requests* the invalidation or reduction of his sentence, but whenever the requested relief requires as its predicate a determination that a sentence currently being served is invalid or unconstitutionally long." *Young,* 907 F.2d at 876.

While these definitions focus on the sentence of confinement as opposed to the sentence of death, they militate against defendants' allegation that plaintiffs' case should rightly be brought in habeas. In all habeas cases the petitioner must seek a release from his or her sentence. That is not true in this case. Here plaintiffs seek review of the method by which their sentence will be carried out. This is a case in which the plaintiffs "[do] not challenge the

fact or nature of [their] sentence or the state's right to execute [them] thus distinguishing this § 1983 action from one brought under 28 U.S.C. § 2254 (state habeas)." *Sullivan v. Dugger,* 721 F.2d 719, 720 (11th Cir.1983). The *Sullivan* court explicitly held that cases challenging the method of execution of a death sentence can be brought under section 1983.

While plaintiffs were sentenced to death by a judicial pronouncement, the determination of what means should be used to carry out that pronouncement is exclusively within the province of the legislature. *In re Anderson,* 69 Cal.2d 613, 630, 73 Cal.Rptr. 21, 447 P.2d 117 (1968), *cert. denied,* 406 U.S. 971, 92 S.Ct. 2415, 32 L.Ed.2d 671 (1972) ("The fixing of penalties for crime is a legislative function."). A challenge to a means of execution cannot, by definition, be a challenge to a judicial pronouncement.[4] Since plaintiffs' claim does not, and could not, challenge the fact or duration of sentence, it need not be brought as a habeas claim. To hold otherwise would carve out of habeas and section 1983 law a separate jurisprudence for death penalty cases. There is no authority for such a dichotomy.

At oral argument, defendants asserted that because plaintiffs' requested relief would prevent the state from performing executions under its current statutory scheme, plaintiff's claim challenges the very fact of the sentence of execution and must be brought under habeas. This court disagrees. Were the court to grant injunctive relief in this case, the state would not be enjoined from performing executions, it would merely be enjoined from performing executions in an unconstitutional manner. The fact that plaintiffs may not be executed as a consequence of a court finding that the state's designated method of exe-

---

**3.** While a request for release or a determination that requires release is an important defining criteria in habeas, habeas is not solely defined by the type of relief requested. For example, a request for damages alone cannot convert a habeas claim into a claim under Section 1983.

**4.** In the case of Robert Harris, the trial judge sentenced him as follows: "it is the Judgement

and sentence of the Court with reference to Counts Five and Six of the Amended Information, that ROBERT ALTON HARRIS shall be put to death by the administration of lethal gas within the walls of the State Prison at San Quentin, California, in accordance with PC 3604 as to both counts pursuant to PC 669."

cution is unconstitutional does not convert a civil rights challenge to the method into a habeas action. For example, numerous prison overcrowding cases, which have resulted in the eventual release of prisoners, have been brought under section 1983.

## II. This Court need not Abstain

### A. Younger Abstention

■ Defendants characterize the imminent executions of plaintiffs as state proceedings from which this court must abstain from reviewing on the basis of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) abstention. However, "three requirements must be satisfied before a federal court may properly invoke the *Younger* abstention doctrine: (1) ongoing state judicial proceedings; (2) implication of an important state interest in the proceedings; and (3) an adequate opportunity to raise federal questions in the proceedings." *Lebbos v. Judges of Super. Ct., Santa Clara County,* 883 F.2d 810, 814 (9th Cir.1989) (quoting *World Famous Drinking Emporium, Inc. v. City of Tempe,* 820 F.2d 1079, 1082 (9th Cir.1987)). Although *Younger* has been applied beyond criminal prosecutions to civil and contempt cases, defendants cite no authority for its application *after* the state court has issued a final judgment. Following defendants' argument that abstention is required until the "completion of the criminal process," a plaintiff could not bring a section 1983 claim until after the completion of his or her prison sentence. In addition, defendants' claim flies in the face of the policy that " '[a]bstention from the exercise of federal jurisdiction is the exception, not the rule,' and '[a]bsent significant countervailing interests, the federal courts are obliged to exercise their jurisdiction.' " *Lebbos,* 883 F.2d at 813 (quoting *World Famous Drinking Emporium,* 820 F.2d at 1082).[5]

■ Defendants also assert that since plaintiffs did not raise the issue of the constitutionality of lethal gas execution on state habeas or on direct appeal, this court should refuse to review those claims now. Defendants do not cite any case authority for this proposition. Indeed, a long line of federal cases has explicitly held that no exhaustion of state remedies is required for plaintiffs' section 1983 claims. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In *McNeese v. Board of Education,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), the Supreme Court reaffirmed that "relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided a remedy." *Id.* at 671, 83 S.Ct. at 1435. Although there is a tension between the principle of comity and section 1983, these cases show that the Supreme Court has resolved the tension in favor of section 1983. To hold otherwise would carve out of section 1983 law a separate jurisprudence for death penalty cases. This court sees no principled reason to do so.

### B. This Case can be Properly Brought under section 1983

■ Cases challenging the method of execution of a death penalty sentence have been brought under section 1983. *Sullivan v. Dugger,* 721 F.2d 719 (11th Cir.1983) ("Appellant does not challenge the fact or nature of his sentence or the state's right to execute him thus distinguishing this § 1983 action from one brought under 28 U.S.C. § 2254 (state habeas).") In addition, various cases involving challenges to a method of execution have assumed that those challenges could be brought under section 1983 in order to reach the merits of those cases. *O'Bryan v. McKaskle,* 729 F.2d 991 (5th Cir.1984); *Silagy v. Thompson,* 1991 WL 18418, 1991 U.S. Dist. LEXIS 1399; *Byrne v. Roemer,* 847 F.2d 1130 (5th Cir.1988).

---

**5.** Defendants rely heavily on *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), for the proposition that the *Younger* abstention doctrine is not confined to pending state proceedings. However, while *Younger* has been extended beyond its original bounds, it has never been applied in a case where a final unappealable judgment has been rendered. That is the situation before the court here.

### III. Plaintiffs' Motion for a Temporary Restraining Order

#### A. Standard

■ In a motion for a TRO, "a party must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor." *Oakland Tribune, Inc. v. Chronicle Pub. Co.,* 762 F.2d 1374 (9th Cir.1985). While this court would evaluate a motion for a preliminary injunction by the first standard, the court finds it appropriate to consider this motion for a TRO under the less stringent second standard.

#### B. Serious Questions Going to the Merits

##### 1. Evolving Standards of Decency

■ The Eighth Amendment proscribes "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'" *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)). In evaluating whether these standards of decency are met the court must consider whether: 1) the punishment is cruel or involves torture or a lingering death, *see In re Kemmler,* 136 U.S. 436, 447, 10 S.Ct. 930, 933, 34 L.Ed. 519 (1890), and whether 2) it involves the unnecessary and wanton infliction of pain, *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). In addition, "no court would approve any method of implementation of the death sentence found to involve unnecessary cruelty in light of presently available alternatives." *Furman v. Georgia,* 408 U.S. 238, 430, 92 S.Ct. 2726, 2824, 33 L.Ed.2d 346 (1972) (Rehnquist, J. dissenting)

Only one federal court has upheld the use of lethal gas to carry out the death penalty. *Gray v. Lucas,* 710 F.2d 1048 (5th Cir.1983), *cert. denied,* 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983). Al-

though that court articulated the "evolving standards of decency" doctrine, it concluded by comparing lethal gas to "traditional modes of execution." *Id.* at 1061. The *Gray* court based its Eighth Amendment evaluation of the use of lethal gas on largely outdated methods of execution: "Traditional deaths by execution, such as hanging, have always involved the possibility of pain and terror for the convicted person. Although contemporary notions of civilized conduct may indeed cause some reassessment of what degree or length is acceptable, we are not persuaded [to find lethal gas to constitute cruel and unusual punishment]." *Id.* at 1061. *Gray,* which involved a Mississippi statute, was decided in 1983. Since that time Mississippi, as well as North Carolina, Wyoming and Oregon have abandoned lethal gas or provided an alternative. Of the states relied upon by *Gray* as having approved the use of lethal gas *only* California retains that method of execution.

##### 2. Lethal Gas Cases in California

The two California state cases, cited by *Gray, People v. Daugherty,* 40 Cal.2d 876, 256 P.2d 911 (1953), *cert. denied,* 346 U.S. 880, 74 S.Ct. 120, 98 L.Ed. 387 (1953), and *In Re Anderson,* 69 Cal.2d 613, 73 Cal. Rptr. 21, 447 P.2d 117 (1968), *cert. denied,* 406 U.S. 971, 92 S.Ct. 2415, 32 L.Ed.2d 671 (1972), uphold the constitutionality of the use of lethal gas.[6] However, those cases lay out a framework in which that method of execution could be found to be unconstitutional under current standards. The holding in *Daugherty* was based on the assumption that lethal gas was the most humane method of execution: "We think it fair to assume that our Legislature, in enacting the law in question, sought to provide a method of inflicting the death penalty in the most humane manner known to modern science." *Daugherty,* 256 P.2d at 922.

While this court recognizes that the Eighth Amendment does not require states to adopt the most humane method of execution, the evidence submitted by plaintiffs suggests that lethal gas may be slow, pain-

---

**6.** It is unclear whether these decisions were made under the federal or state constitution.

ful, and torturous in violation of the Eighth Amendment. In fact, the eyewitness descriptions of executions by lethal gas provided in plaintiffs' memoranda are comparable to the descriptions of hanging in *State v. Frampton,* 95 Wash.2d 469, 627 P.2d 922, 934–35 (1981), a case in which the court found hanging to be an unconstitutional method of execution.[7]

### 3. *Evidence of Contemporary Standards of Decency*

The constitutional status of a given punishment " 'should be informed by objective factors to the maximum possible extent.' " *Enmund v. Florida,* 458 U.S. 782, 788, 102 S.Ct. 3368, 3372, 73 L.Ed.2d 1140 (1982). One key objective indicator is legislative pronouncements. "The clearest and most reliable evidence of contemporary values is the legislation enacted by the country's legislatures." *Penry v. Lynaugh,* 492 U.S. 302, 331, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256 (1989) (per O'Connor, J.). As Justice Scalia stated on behalf of the Court in *Stanford v. Kentucky,* 492 U.S. 361, 370, 109 S.Ct. 2969, 2975, 106 L.Ed.2d 306 (1989), " '[F]irst' among the 'objective indicia that reflect the public attitude toward a given sanction' are statutes passed by society's elected representatives." Constitutional infirmities are not avoided by a state's approval of the means used, if the national consensus, determined in the manner described in *Stanford,* is to the contrary. *Id.* at 381, 109 S.Ct. at 2981 (O'Connor, J., concurring). Plaintiffs have submitted substantial evidence of legislative movement away from the use of lethal gas. Of the thirty-eight United States jurisdictions that have the death penalty, only three states prescribe execution by lethal gas, in three other states prisoners may choose between gas and another method of execution. Plaintiffs' Memorandum in Support of Temporary Restraining Order, Ex. 62 ("Memo in support of TRO"). Of the three states which prescribe execution by gas, Maryland, Arizona and California, only Arizona has had an execution in the last twenty five years. Following that execution, on April 6, 1992, the Arizona legislature sought to eliminate the use of lethal gas. Memo in Support of TRO, Ex. 41. In addition, in the past fifteen years at least eight states have abandoned the use of lethal gas in favor of the use of lethal injection. *See* Memo in Support of TRO at 12–14. Defendants do not dispute these recitations. Indeed, defendants have offered no evidence in rebuttal. Therefore, the court finds that the actions of many state legislatures suggest that evolving standards of decency have lead to the abandonment of the use of lethal gas as a means of execution.

### 4. *Balance of the Hardships*

There is little question that the balance of the hardships weighs in plaintiffs' favor. Defendants argue that granting the TRO would necessitate staying the execution of one of the named plaintiffs, Robert Harris, and would require the state to obtain a new death warrant and to set a new date for his execution. However, the inconvenience to the state is inconsequential compared to the certainty that plaintiff Harris' impending execution would go forward without review of his constitutional claims. In addition, an evidentiary hearing on the merits of plaintiffs' claim must take place within 10 days, therefore any delay caused by the TRO grant is minimal.

For the reasons stated above, the court GRANTS plaintiffs' motion for a temporary restraining order.

IT IS SO ORDERED.

---

**7.** Although defendants argued that eye witness accounts of gas chamber executions, including those of medical professionals who examined the bodies of the deceased, were not competent evidence of the fact the death by lethal gas is slow, painful and torturous, it is unclear to the court what other evidence could be more probative.