David FIERRO; Alejandro Gilbert Ruiz; and Robert Alton Harris, as individuals and on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

James GOMEZ, as an individual and in his capacity as Director, California Department of Corrections; and Arthur Calderon, as an individual, and in his capacity as Warden of San Quentin Prison, Defendants–Appellants.

No. 94–16775.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 1995.

Decided Feb. 21, 1996.

**302**

Michael Laurence, American Civil Liberties Union Foundation of Northern California, Inc., San Francisco, California, and Warren E. George, McCutchen, Doyle, Brown & Enerson, San Francisco, California, for plaintiffs-appellees.

Dane R. Gillette, Deputy Attorney General, San Francisco, California, for defendants-appellants.

Constance de la Vega, San Francisco, CA, for Human Rights Advocates.

David Weissbrodt, Legal Counsel, Barbara Frey, Executive Director, Minneapolis, MN, for Minnesota Advocate for Human Rights.

Before: PREGERSON, BRUNETTI, and T.G. NELSON, Circuit Judges.

PREGERSON, Circuit Judge:

Plaintiffs, three California inmates sentenced to death, brought this action under 42 U.S.C. § 1983. The inmates alleged that California's method of execution, lethal gas, constitutes cruel and unusual punishment and thus violates the Eighth and Fourteenth Amendments of the federal Constitution. The United States District Court for the Northern District of California held that, to the extent that the statute provides for execution by lethal gas, it is cruel and unusual punishment. Defendants James Gomez, Director of the California Department of Corrections, and Arthur Calderon, Warden of San Quentin Prison, now appeal that decision. Defendants also appeal the district court's permanent injunction against the use of lethal gas as a method of execution. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## PRIOR PROCEEDINGS

On April 17, 1992, plaintiffs David Fierro, Alejandro Gilbert Ruiz, and Robert Alton Harris, California inmates sentenced to death, filed this suit on behalf of themselves and all others similarly situated. *Fierro v. Gomez*, 790 F.Supp. 966 (N.D.Cal.1992) ("*Fierro I* "). Harris was scheduled to be executed in California's gas chamber on April 21, 1992, four days later. The inmates sought relief under 42 U.S.C. § 1983, alleging that California's method of execution statute, Cal.Penal Code § 3604, violates the Eighth and Fourteenth Amendments to the United States Constitution. Defendants opposed the suit, alleging that the district court did not have jurisdiction under § 1983. Defendants argued that a challenge to the method by which an inmate will be executed must be brought as a petition for writ of habeas corpus rather than as a § 1983 civil rights action. *Fierro I*, 790 F.Supp. at 968. The district court held that it had jurisdiction under § 1983 because plaintiffs were not challenging the fact or duration of their sentences and were therefore not required to bring their claims as habeas petitions. *Id.*

The district court granted plaintiffs' motion for a temporary restraining order ("TRO") enjoining defendants from executing any California death row inmate by means of lethal gas. *Fierro I*, 790 F.Supp. at 967. The court found that there existed serious questions going to the merits and that an evidentiary hearing was necessary. *Id.* at 970–71.

Defendants appealed to this court and we vacated the district court's TRO. *Gomez v. United States Dist. Court*, No. 92–70237, 1992 WL 155238, 1992 U.S.App. LEXIS 7031 (9th Cir. Apr. 20, 1992), *vacated as moot and withdrawn*, 966 F.2d 463 (9th Cir.1992). At least three stays were subsequently entered by this court and then vacated by the U.S. Supreme Court. *See Gomez v. U.S. District Court for Northern District of California*, No. 92–55426 (9th Cir., Apr. 20, 1992), *vacated by Vasquez v. Harris*, 503 U.S. 1000, 112 S.Ct. 1713, 118 L.Ed.2d 418 (1992) (No. A–766); *Gomez v. United States Dist. Court*, 503 U.S. 653, 112 S.Ct. 1652, 118 L.Ed.2d 293

(1992) (No. A–767); *Vasquez v. Harris,* No. 92–70237 (9th Cir., Apr. 21, 1992), *vacated by Vasquez v. Harris,* 503 U.S. 1000, 112 S.Ct. 1713, 118 L.Ed.2d 419 (1992) (No. A–768).

Harris also filed a petition for writ of habeas corpus with the California Supreme Court on April 21, 1992. This petition challenged the constitutionality of execution by lethal gas under both the federal and California constitutions. The California Supreme Court, in an unpublished decision with one justice dissenting, denied the case "on the merits." *In re Robert Alton Harris,* No. S026235 (Cal.Sup.Ct.1992) (in bank). The court offered no new analysis for its conclusion, merely citing to its own previous decisions and those of other courts finding execution by lethal gas to be constitutional.[1] *Id.* at 1. The court also emphasized the "last minute" nature of Harris's claim, *id.* at 1–2, as did the U.S. Supreme Court, *Gomez v. United States Dist. Court,* 503 U.S. at 654, 112 S.Ct. at 1653.

Harris was executed in San Quentin's gas chamber shortly after 6:00 a.m. on April 21, 1992. Plaintiffs Fierro and Ruiz remain on California's death row.

When California executed Harris, the state's sole method of execution was the "administration of a lethal gas." Cal.Penal Code § 3604 (West 1982). Soon after Harris's execution, in response to this case, the California Legislature amended section 3604 by adding lethal injection as an alternative means of execution. Cal.Stats.1992, c. 558. The amended statute provides for execution by lethal gas unless an inmate affirmatively chooses lethal injection and "if either manner of execution . . . is held invalid, the punishment of death shall be imposed by the alternative means." Cal.Penal Code § 3604 (West Supp.1995).

In October and November 1993, the district court held an eight-day bench trial on the original § 1983 action. *Fierro v. Gomez,*

865 F.Supp. 1387, 1389 (N.D.Cal.1994) ("*Fierro II* "). Soon after the trial but before the district court issued its decision, an en banc panel of this court held constitutional the State of Washington's protocol for execution by hanging. *Campbell v. Wood,* 18 F.3d 662 (9th Cir.1994) (en banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994). The district court then ordered the *Fierro* parties to file supplementary briefs addressing the impact of *Campbell* on the *Fierro* case. The district court published its decision in October 1994. *Fierro II,* 865 F.Supp. 1387.

In *Fierro II,* the district court found that "California Penal Code § 3604, to the extent that it requires or permits the imposition of death by administration of lethal gas, violates the eighth and fourteenth amendments of the United States Constitution." 865 F.Supp. at 1415. The court enjoined defendants from using lethal gas to execute either of the two remaining plaintiffs or any other California death row inmate. *Id.*

## ANALYSIS

### A. Section 1983.

#### 1. Standard of Review.

■ The district court's conclusions of law are reviewed de novo. *Price v. United States Navy,* 39 F.3d 1011, 1021 (9th Cir. 1994). We thus review de novo whether the district court was correct in concluding that a challenge to a method of execution may be brought as a § 1983 civil rights action.

#### 2. Discussion.

■ Section 1983 provides the statutory authorization for most federal court suits against local governments or state and local government officials to redress violations of federal civil rights. To bring a § 1983 action, a plaintiff must allege (1) a violation of a

---

1. Justice Stanley Mosk dissented because he found that an evidentiary hearing was justified. *Harris,* No. S026235, at 3–4. Justice Mosk noted that the California Supreme Court had last analyzed execution by lethal gas in 1953 and that, at the time, the court had implied that it was "controlled by our scientific knowledge of the subject." *Id.* at 3 (quoting *People v. Daugherty,* 40

Cal.2d 876, 895, 256 P.2d 911, 922 (1953), *cert. denied,* 346 U.S. 827, 74 S.Ct. 47, 98 L.Ed. 352 (1953)). Justice Mosk pointed out that the court's " 'knowledge,' however, apparently consisted of the 'fact' that '[f]or many years animals have been put to death painlessly by the administration of poisonous gas.' " *Id.* (quoting *Daugherty,* 40 Cal.2d at 895, 256 P.2d at 922).

right secured by the Constitution or federal law, and (2) that this right was violated by someone acting under color of state law. 42 U.S.C. § 1983; *Fierro I,* 790 F.Supp. at 967. Challenges to prison conditions ("conditions of confinement") are often brought as § 1983 actions. *See, e.g., Rhodes v. Chapman,* 452 U.S. 337, 340, 101 S.Ct. 2392, 2395–96, 69 L.Ed.2d 59 (1981) (allowing Eighth Amendment challenge to a prison's practice of "double celling" to be brought under § 1983); *Hutto v. Finney,* 437 U.S. 678, 685, 98 S.Ct. 2565, 2570–71, 57 L.Ed.2d 522 (1978) (allowing Eighth Amendment challenge to conditions of confinement to be brought under § 1983).

■ In contrast, an inmate must challenge the constitutionality of his conviction or sentence by means of a petition for writ of habeas corpus. *Preiser v. Rodriguez,* 411 U.S. 475, 489–90, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973). The habeas statute provides that:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the grounds that he is in custody in violation of the constitution or laws or treaties of the United States.

28 U.S.C. § 2254. Habeas corpus's "traditional purpose" is to allow an inmate seeking "immediate or more speedy release" to challenge his confinement. *Preiser,* 411 U.S. at 494, 93 S.Ct. at 1838–39.

Here, the district court found that plaintiffs Fierro, Ruiz, and Harris could properly bring their claims under § 1983.[2] *Fierro I,* 790 F.Supp. at 967. The court reasoned that plaintiffs sought "review of the method by which their sentence will be carried out" rather than review of the fact that they were sentenced to death. In addition, the court held that:

> Since plaintiffs' claim does not, and could not, challenge the fact or duration of sen-

tence, it need not be brought as a habeas claim. To hold otherwise would carve out of habeas and § 1983 law a separate jurisprudence for death penalty cases. There is no authority for such a dichotomy.

*Id.* at 968.

The court noted that several method of execution challenges have been brought under § 1983. *Fierro I,* 790 F.Supp. at 969. In one of these cases, the Eleventh Circuit specifically found § 1983 appropriate for a method of execution challenge. *Sullivan v. Dugger,* 721 F.2d 719, 720 (11th Cir.1983) (holding that § 1983 is appropriate when an inmate challenges the method by which he is to be executed rather than "the fact or nature of his sentence or the state's right to execute him").

Defendants contend that the district court erred in allowing plaintiffs to bring a challenge to the constitutionality of execution by lethal gas as a § 1983 claim. Defendants argue that § 1983 and habeas are mutually exclusive remedies and that a habeas petition is the sole means by which a death row inmate may challenge the method by which he is to be executed. Defendants rely on *Preiser,* 411 U.S. 475, 93 S.Ct. 1827, to support their argument that habeas and § 1983 are mutually exclusive. *Preiser,* however, noted only that habeas was the exclusive remedy when an inmate challenged "the very fact or duration of his physical imprisonment." 411 U.S. at 500, 93 S.Ct. at 1841–42. *See also Heck v. Humphrey,* —— U.S. ——, ——, 114 S.Ct. 2364, 2369, 129 L.Ed.2d 383 (1994) (stating that *Preiser* held that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983").

Defendants also cite method of execution challenges brought as habeas petitions to support their argument that habeas is the sole means by which an inmate may chal-

---

**2.** The court also correctly noted that "[t]he Supreme Court has declined to address whether conditions of confinement claims may be brought under habeas." *Fierro I,* 790 F.Supp. at 967 n. 2 (citing *Bell v. Wolfish,* 441 U.S. 520, 526 n. 6, 99 S.Ct. 1861, 1868 n. 6, 60 L.Ed.2d 447 (1979)). In the present case, we also decline to address whether a challenge to a condition of confinement or method of execution may be brought under habeas as this issue is not before us.

lenge the method by which he is to be executed. In particular, defendants rely on this court's recent en banc decision in which the majority opinion held that Washington's protocol for execution by hanging did not constitute cruel and unusual punishment. *Campbell v. Wood,* 18 F.3d 662 (9th Cir.1994), *cert. denied,* — U.S. —, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994).

■ No court, however, has held that method of execution challenges must be brought as habeas petitions rather than § 1983 actions. In fact, a federal court may construe a § 1983 action as a habeas petition, *Franklin v. Oregon,* 662 F.2d 1337, 1347 & n. 13 (9th Cir.1981), or a habeas petition as a § 1983 action, *Wilwording v. Swenson,* 404 U.S. 249, 251, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971) (per curiam).[3] In addition, as defendants acknowledge, at least two circuits have allowed method of execution challenges to be brought as § 1983 claims. *See Ingram v. Ault,* 50 F.3d 898, 899 (11th Cir.1995); *O'Bryan v. McKaskle,* 729 F.2d 991, 992–93 & n. 1 (5th Cir.1984); *Sullivan v. Dugger,* 721 F.2d 719, 720 (11th Cir.1983).

Defendants cite no authority for their claim that allowing plaintiffs to pursue their method of execution challenge would result in reductions in their sentences. Indeed, the current California method of execution statute provides that, if lethal gas "is held invalid, the punishment of death shall be imposed by the alternative means," lethal injection. Cal.Penal Code § 3604 (West Supp.1995). Thus, regardless of whether we conclude that the district court was correct in finding execution by lethal gas unconstitutional, plaintiffs' sentences of death remain unaffected.

■ Section 1983 actions, unlike habeas petitions, do not have a state exhaustion requirement. *See Monroe v. Pape,* 365 U.S.

167, 183, 81 S.Ct. 473, 481–82, 5 L.Ed.2d 492 (1961) (stating that, with a § 1983 action alleging a constitutional violation, "the federal remedy is supplementary to the state remedy and the latter need not be first sought and refused before the federal one is invoked"). Defendants cite the exhaustion requirement to support their argument that plaintiffs must challenge their executions by lethal gas by habeas petition rather than as a § 1983 claim. This, however, does not affect our analysis.

■ There is no authority to support defendants' assertion that habeas is the exclusive means by which to challenge a method of execution. Method of execution challenges are analogous to challenges to conditions of confinement. If an inmate challenges a condition of confinement as a violation of the Eighth Amendment's prohibition on cruel and unusual punishment, he may bring that challenge as a § 1983 action. There is no authority for treating the present case any differently. As stated by the district court, "[t]o hold otherwise would carve out of habeas and § 1983 law a separate jurisprudence for death penalty cases." *Fierro I,* 790 F.Supp. at 968.

Our court has defined the appropriate situation in which to seek habeas relief as "whenever the requested relief requires as its predicate a determination that a sentence currently being served is invalid or unconstitutionally long." *Young v. Kenny,* 907 F.2d 874, 876 (9th Cir.1989), *cert. denied,* 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991). Plaintiffs here do not allege that their sentences are invalid. Nor do they allege that their sentences are unconstitutionally long. They seek only to prevent their executions by lethal gas. We therefore follow our sister circuits and hold that a

---

3. This helps explain why some method of execution challenges have been brought as habeas petitions and others as § 1983 actions. The courts may have construed habeas petitions as § 1983 actions and vice versa, without noting this fact. *See e.g., Graham v. Broglin,* 922 F.2d 379, 381–82 (7th Cir.1991) ("If a prisoner who should have asked for habeas corpus misconceives his remedy, brings a civil rights suit, and fails to exhaust his state remedies, his suit must be dismissed. But if, as in this case, he asks for habeas corpus when he should have brought a civil rights suit, all he has done is mislabel his suit, and either he should be given leave to plead over or the mislabeling should simply be ignored."); *Franklin,* 662 F.2d at 1347 n. 13 ("Nonetheless, we find that the trial court was justified in construing Franklin's complaint as a habeas petition [rather than a § 1983 suit] because Franklin brought his complaint pro se. Courts cannot expect a pro se litigant to adhere to formalistic pleading requirements.").

challenge to a method of execution may be brought as a § 1983 action.

In sum, a challenge to the method by which an inmate sentenced to death will be executed may be brought pursuant to § 1983. The district court was correct in allowing plaintiffs to pursue their claims under § 1983.

## B. Cruel and Unusual Punishment.

### 1. Standard of Review.

■ Following a bench trial, the judge's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Fed.R.Civ.P. 52(a); *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 385 (9th Cir.1994). "Review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Exxon Co. v. Sofec Inc.*, 54 F.3d 570, 576 (9th Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 493, 133 L.Ed.2d 419 (1995) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 623–25, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (1993)). The district court's conclusions of law and the ultimate question of the constitutionality of California's method of execution statute are reviewed de novo. *Destination Ventures, Ltd. v. FCC*, 46 F.3d 54, 55 (9th Cir.1995); *National Ass'n of Radiation Survivors v. Derwinski*, 994 F.2d 583, 587 (9th

Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 634, 126 L.Ed.2d 592 (1993).

### 2. Discussion.

■ The Eighth Amendment prohibits governmental imposition of "cruel and unusual punishments," U.S. Const. amend. VIII, and bars "infliction of unnecessary pain in the execution of the death sentence," *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 464, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947) (plurality opinion). "Punishments are deemed cruel when they involve torture or a lingering death...." *In re Kemmler*, 136 U.S. 436, 447, 10 S.Ct. 930, 933–34, 34 L.Ed. 519 (1890). The meaning of "cruel and unusual" must be interpreted in a "flexible and dynamic manner," *Gregg v. Georgia*, 428 U.S. 153, 171, 96 S.Ct. 2909, 2924, 49 L.Ed.2d 859 (1976) (joint opinion), and measured against "the evolving standards of decency that mark the progress of a maturing society," *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion).[4]

Although this court has never addressed whether execution by lethal gas is cruel and unusual punishment, we recently applied Eighth Amendment standards to execution by hanging. *Campbell v. Wood*, 18 F.3d 662 (9th Cir.1994) (en banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994). The en banc majority opinion in *Campbell* held that hanging, when conducted according to Washington State's detailed protocol, did not constitute cruel and unusual punishment.[5]

---

**4.** In addition to analyzing pain, a number of Eighth Amendment decisions also examine legislative trends. Evidence of legislative trends away from a particular punishment or of the proportion of states imposing a particular punishment is relevant evidence of whether a punishment is "cruel and unusual." *Trop v. Dulles*, 356 U.S. 86, 102, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion); *Weems v. United States*, 217 U.S. 349, 377, 30 S.Ct. 544, 553, 54 L.Ed. 793 (1910). Legislative trends are particularly relevant when measuring the "evolving standard of decency." *Penry v. Lynaugh*, 492 U.S. 302, 331, 109 S.Ct. 2934, 2953–54, 106 L.Ed.2d 256 (1989); *Stanford v. Kentucky*, 492 U.S. 361, 373, 109 S.Ct. 2969, 2977, 106 L.Ed.2d 306 (1989); *McCleskey v. Kemp*, 481 U.S. 279, 300, 107 S.Ct. 1756, 1771, 95 L.Ed.2d 262 (1987). *See also Campbell v. Wood*, 18 F.3d 662, 682 (9th Cir.1994) (en banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 2125, 128 L.Ed.2d 682

(1994) (concluding that, although the number of states using a particular method of execution, hanging, "is evidence of public perception," such evidence is not dispositive merely because few states continue using that particular method).

**5.** The district court relied on evidence of only one hanging, that of Westley Allan Dodd, conducted in 1993 in accordance with the protocol. According to the doctor who witnessed the execution and pronounced Dodd's death, "Dodd became unconscious within a matter of seconds." *Campbell*, 18 F.3d at 685. The district court excluded evidence of other hangings in which the inmate had died through either asphyxiation or by decapitation because these "bungled" hangings "could not be reliably compared to" Washington's method, which was governed by a detailed protocol. *Id.*

Washington's protocol regulates the diameter of the rope, the elasticity of the rope, the proper

In *Campbell* we stated that, when analyzing a method of execution, as opposed to the proportionality of a punishment to a particular crime, judicial review "focuses more heavily on the objective evidence of the pain involved in the challenged method." 18 F.3d at 682. We concluded in *Campbell* that it was not necessary to analyze legislative trends because unconsciousness and death by hanging, performed in accordance with Washington's protocol, was quick and thus did not inflict an unconstitutional amount of pain. *See id.* at 682–83. We affirmed the district court's factual findings, summarizing them as follows:

> [T]he mechanisms involved in bringing about unconsciousness and death in judicial hanging occur extremely rapidly, ... unconsciousness was likely to be immediate or within a matter of seconds, and ... death would follow rapidly thereafter. The ... risk of death by decapitation was negligible, and ... hanging according to the protocol does not involve lingering death, mutilation, or the unnecessary and wanton infliction of pain.

*Id.* at 687.

In *Fierro II*, the district court correctly determined the framework under which the constitutionality of execution by lethal gas must be evaluated:

> First, the key question to be answered in a challenge to a method of execution is how much pain the inmate suffers.... Death where unconsciousness is likely to be immediate or within a matter of seconds is apparently within constitutional limits. While the *Campbell* court did not pinpoint a threshold at which the time to unconsciousness and the corresponding pain would violate the Constitution, the court implied that the persistence of consciousness for over a minute or for between a minute and a minute-and-a-half, but no longer than two minutes might be outside constitutional boundaries.
>
> *Campbell* also made clear that the method of execution must be considered in terms of the *risk* of pain. The *Campbell* court determined that under the Washington hanging protocol, the risk of a prolonged and agonizing death by asphyxiation or decapitation was negligible.

*Fierro II*, 865 F.Supp. at 1410–11 (footnotes, citations, and internal quotations omitted).

■■■ In the present case, the district court held an eight-day bench trial. *Fierro II*, 865 F.Supp. at 1389. The court heard testimony from several expert medical witnesses and reviewed scientific literature regarding the effect of cyanide gas inhalation on humans and animals. *Id.* at 1393–1400. The court also reviewed official San Quentin Prison execution records. These records were compiled by medical personnel while attending executions performed at San Quentin between 1937 and 1994. *Id.* at 1400–03. Other evidence considered by the court included eyewitness accounts of executions from media representatives and from friends and relatives of the executed inmates. *Id.* at 1401. The court found most probative the testimony of plaintiffs' experts, the responses of defendants' expert witnesses during cross-examination, and the official execution records. *Id.* at 1403–04. The court also noted that the execution records of Robert Harris and David Mason, executed in 1992 and 1993 respectively, were "the most probative evidence of pain and consciousness experienced" by those inmates executed in San Quentin's gas chamber "because these executions were conducted in accordance with the challenged protocol." *Id.* at 1401.

The execution records provided information regarding the exact time that certain events occur during the execution process. These events include the time that cyanide is released into the gas chamber, the time that the gas first strikes an inmate's face, the time that an inmate lapses into apparent unconsciousness, the time of certain unconsciousness, and the time of an inmate's last bodily movement. *Fierro II*, 865 F.Supp. at 1401. For example, Harris did not lapse into apparent unconsciousness until two minutes

---

knot to use, and the particular distance the inmate is dropped, depending on his body weight. The protocol, by defining and regulating these factors, sought to ensure "rapid unconsciousness and death" and to avoid "the risks of death by asphyxiation and decapitation, as opposed to death by injury to vascular, spinal, and nervous functions." *Campbell*, 18 F.3d at 683.

after the cyanide gas first hit his face. Harris did not appear certainly unconscious until an additional minute had passed. Similarly, Mason did not lapse into apparent unconsciousness until one minute after he began breathing the gas. Mason was not recorded as being certainly unconscious until an additional two minutes had passed. The district court also noted that "many of Mason's apparently conscious actions appeared to be responses to pain," such as tight clenching of his fists, how his head was thrown back, and how his throat muscles strained. *Id.* at 1402.

The district court summarized its findings from this evidence as follows:

> [I]nmates who are put to death in the gas chamber at San Quentin do not become immediately unconscious upon the first breath of lethal gas. . . . [A]n inmate probably remains conscious anywhere from 15 seconds to one minute, and . . . there is a substantial likelihood that consciousness, or a waxing and waning of consciousness, persists for several additional minutes. During this time, . . . inmates suffer intense, visceral pain, primarily as a result of lack of oxygen to the cells. The experience of "air hunger" is akin to the experience of a major heart attack, or to being held under water. Other possible effects of the cyanide gas include tetany, an exquisitely painful contraction of the muscles, and painful build-up of lactic acid and adrenaline. Cyanide-induced cellular suffocation causes anxiety, panic, terror, and pain.

*Fierro II,* 865 F.Supp. at 1404 (internal citations omitted).

The district court then applied these evidentiary findings to *Campbell*'s analytic framework. The court first considered the level of pain suffered by an inmate during execution. The district court's primary findings were that: (1) "inmates are likely to be conscious for anywhere from fifteen seconds to one minute from the time that the gas strikes their face," (2) "there is a substantial risk that consciousness may persist for up to several minutes," (3) "during this period of consciousness, the condemned inmate is likely to suffer intense physical pain," and (4) the cause of death by cyanide gas, cellular suffo-

cation, was a "substantially similar experience to asphyxiation" and that *Campbell* had suggested that asphyxiation would be an impermissibly cruel method of execution. *Fierro II,* 865 F.Supp. at 1413.

The district court stated that the evidence did not "demonstrate conclusively" that inmates executed by lethal gas suffered for "minutes on end." *Fierro II,* 865 F.Supp. at 1414. Yet the court also stated that the evidence did not "show that inmates suffer pain for only a matter of seconds." *Id.* As a result, the court concluded that "[t]his case falls somewhere in between" the two extremes. *Id.* The court then turned to a consideration of legislative trends to determine whether execution by lethal gas violated the Eighth Amendment. *Id.*

We think that there was no need for the district court to engage in an analysis of legislative trends. We believe that the district court's factual findings regarding pain are dispositive under the framework of *Campbell.* The court's findings regarding the type and level of pain inflicted during execution by lethal gas under California's protocol, when combined with its finding that there exists a substantial risk that this pain will last for several minutes, dictate such a result. We accept these factual findings because they are fully supported by the record and thus are not clearly erroneous. Under *Campbell,* such horrible pain, combined with the risk that such pain will last for several minutes, by itself is enough to violate the Eighth Amendment. Such being the case, a legislative trend analysis is unnecessary.

We recognize that two circuits have declined to conclude that execution by lethal gas is unconstitutional. *Gray v. Lucas,* 710 F.2d 1048 (5th Cir.1983), *cert. denied,* 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983); *Hunt v. Nuth,* 57 F.3d 1327 (4th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 724, 133 L.Ed.2d 676 (U.S.1996).

In *Gray,* the Fifth Circuit affirmed the district court's denial of an evidentiary hearing to a death row inmate challenging execution by lethal gas. The Fifth Circuit concluded that:

[W]e are not persuaded that under the present jurisprudential standards the showing made by Gray justifies this intermediate appellate court holding that, as a matter of law or fact, the pain and terror resulting from death by cyanide gas is so different in degree or nature from that resulting from other traditional modes of execution as to implicate the eighth amendment right.

*Gray*, 710 F.2d at 1061. Unlike the instant case, however, neither the district nor appellate court had the benefit of extensive expert witness testimony that had been subjected to searching cross-examination. Nor, apparently, did either court have the benefit of extensive prison medical records documenting inmates' deaths by lethal gas and the lengths of time that these inmates likely remained conscious after exposure to the gas.

In *Hunt*, the Fourth Circuit declined to follow *Fierro II*. The court stated that "[l]ethal gas currently may not be the most humane method of execution—assuming that there could be a humane method of execution—but the existence and adoption of more humane methods does not automatically render a contested method cruel and unusual." *Hunt*, 57 F.3d at 1337–38. Here again, the district court in *Hunt* did not have the benefit of expert witness testimony subjected to searching cross-examination. *See Hunt v. Smith*, 856 F.Supp. 251, 260 (D.Md.1994) (mentioning only petitioners' affidavits as the evidentiary basis for its decision). Nor did the Fourth Circuit have the benefit of findings based on such testimony. In *Hunt*, neither the district court nor the Fourth Circuit mentioned official records that set forth in detail what occurred in the gas chamber during an execution. These were the key pieces of evidence relied on by the district court in the instant case to invalidate execution by lethal gas.

*Gray* and *Hunt* do not alter our conclusion in this case. The district court in the instant case conducted an eight-day trial and was the first to consider extensive evidence on the pain involved in execution by lethal gas, and the first to make extensive factual findings regarding this pain.

In short, we hold that the district court's extensive factual findings concerning the level of pain suffered by an inmate during execution by lethal gas are not clearly erroneous. The district court's findings of extreme pain, the length of time this extreme pain lasts, and the substantial risk that inmates will suffer this extreme pain for several minutes require the conclusion that execution by lethal gas is cruel and unusual. Accordingly, we conclude that execution by lethal gas under the California protocol is unconstitutionally cruel and unusual and violates the Eighth and Fourteenth Amendments. The district court's permanent injunction against defendants is AFFIRMED.