77 F.3d 1155
 96 Cal. Daily Op. Serv. 1320, 96 Daily Journal
D.A.R. 2038
William George BONIN, Petitioner-Appellant,
v.
Arthur CALDERON, Warden, Respondent-Appellee (Two Cases).
William George BONIN, Plaintiff-Appellant,
v.
Arthur CALDERON, Warden, Defendant-Appellee.
 Nos. 96-99003, 96-99004 and 96-99005.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 22, 1996.
Decided Feb. 22, 1996.
 
 Emry J. Allen, Deputy State Public Defender, Sacramento, California, for Petitioner-Appellant.
 Esteban Hernandez, Deputy Attorney General, and Dane R. Gillette, Deputy Attorney General, San Diego, California, for Respondents-Appellees.
 Appeals from the United States District Court for the Central District of California; Edward Rafeedie, District Judge, Presiding.
 Appeal from the United States District Court for the Northern District of California; Marilyn H. Patel, District Judge, Presiding.
 Before: WALLACE, Chief Judge, BRUNETTI and KOZINSKI, Circuit Judges.
 WALLACE, Chief Judge:
 
 
 1
 William George Bonin, a California state prisoner awaiting execution at San Quentin State Prison, appeals from the district court's denials of two petitions for writ of habeas corpus relief under 28 U.S.C. § 2254, and an order dismissing a civil rights action under 42 U.S.C. § 1983. We have jurisdiction over these timely appeals pursuant to 28 U.S.C. §§ 1291, 2253, and we affirm.
 
 
 2
 * The lengthy procedural history of this case and the grisly facts underlying it are discussed in Bonin v. Calderon, 59 F.3d 815 (9th Cir.1995) (Bonin II ), cert. denied, --- U.S. ----, 116 S.Ct. 718, 133 L.Ed.2d 671 (1996). In that decision, we denied Bonin's first set of habeas corpus petitions, which challenged convictions and death sentences imposed as a result of separate trials held in Los Angeles and Orange Counties. Id., aff'g, Bonin v. Vasquez, 807 F.Supp. 589 (C.D.Cal.1992) (Los Angeles County); Bonin v. Vasquez, 794 F.Supp. 957 (C.D.Cal.1992) (Orange County). On February 6, 1996, Bonin again filed two habeas corpus petitions with the California Supreme Court, which denied them on February 15, 1996. Bonin then filed two emergency petitions in the federal district court for the Central District of California challenging his death sentences and seeking an immediate stay of his imminent execution, scheduled for February 23, 1996. On February 20, 1996, the district court denied both petitions and denied Bonin's application for stay of execution, holding that the claims raised by Bonin either constituted an abuse of the writ or lacked merit. The district court granted Bonin a certificate of probable cause to appeal, which we affirmed in a separate, unpublished order.
 
 
 3
 Bonin also filed a civil rights action in the federal district court for the Northern District of California on February 16, 1996, challenging his imminent execution by means of lethal injection. Named defendants James Gomez and Arthur Calderon moved the court to dismiss Bonin's action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court held a hearing on February 20, 1996, and it subsequently dismissed Bonin's action and denied his motion for a temporary restraining order. Bonin appeals from the denials of his habeas petitions and the dismissal of his civil rights action; we consolidate these appeals and address them in turn.
 
 II
 
 4
 We review de novo the denial of Bonin's petitions for writ of habeas corpus. Bonin II, 59 F.3d at 823. We may affirm on any ground supported by the record, even if it differs from the rationale of the district court. Id.
 
 
 5
 Bonin raised twelve claims in his second set of habeas petitions. Claims 1-6 allege that Bonin's counsel on direct appeal in state court (appellate counsel) was ineffective for failing to discover a potential conflict created by trial counsel's dual representation of Bonin and a potential defense witness, that trial counsel should have objected to the testimony of codefendant Gregory Miley, and that the prosecution did not disclose threats and promises made to codefendant James Munro. Bonin alleges these errors resulted in violations of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Although he attempted to raise these claims in a motion to amend his first set of federal habeas petitions, the district court denied the motion as an abuse of the writ. See Bonin v. Vasquez, 999 F.2d 425, 426-27 (9th Cir.1993) (Bonin I ). He also raises other claims not raised in the first habeas corpus petitions: that appellate counsel provided ineffective assistance in not asserting the state trial prosecution knowingly used perjured testimony and did not disclose material impeaching evidence in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights; in not raising the issue of alleged hypnotically-induced testimony of Miley; and in failing to argue the constitutional inadequacy of his convictions due to Miley's testimony.
 
 
 6
 Claims 7-9 allege juror misconduct, of which Bonin learned as a result of interviews with several jurors conducted by his counsel on January 8, 1996. Claim 10 alleges that Bonin's appellate counsel provided ineffective assistance by failing to argue that executing Bonin following the State's "institutional failure"--terminating mental treatment and releasing him from custody, when the State knew Bonin would again commit crimes--constitutes cruel and unusual punishment. Bonin concedes that the factual basis for Claim 10 is found in the appellate record. Claim 11 arises from the amount of time Bonin has spent on death row. Claim 12 challenges the State's authority under California law to calendar a hearing at which Bonin's execution date was scheduled. Bonin also has challenged whether the district court's 1992 judgments were final.
 
 
 7
 State prison warden Calderon argues that all of Bonin's claims are procedurally barred because the California Supreme Court denied Bonin's petitions on adequate and independent state grounds. Alternatively, Calderon argues that Claims 1-11 constitute an abuse of the writ because they could have been brought in Bonin's first set of petitions. See McCleskey v. Zant, 499 U.S. 467, 489, 111 S.Ct. 1454, 1467-68, 113 L.Ed.2d 517 (1991) (McCleskey ) (abuse of the writ may occur where petitioner raises a claim in a subsequent petition that could have been raised in his first, regardless of whether the failure to raise it earlier stemmed from deliberate choice). Calderon also argues that Claim 12 lacks merit.
 
 
 8
 We do not need to consider whether adequate and independent state procedural grounds exist to support the state court's decisions because, even if they do, we may address the merits of Bonin's claims if he can show cause for his procedural defaults and actual prejudice as a result of the alleged violations of federal law. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991) (Coleman ). The same standard applies to Bonin's successive petitions if they were denied on federal grounds. Schlup v. Delo, --- U.S. ----, ---- - ----, 115 S.Ct. 851, 862-63, 130 L.Ed.2d 808 (1995) (Schlup ). Either way, we need to consider cause and prejudice.
 
 
 9
 To demonstrate cause, a petitioner must show that " 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." McCleskey, 499 U.S. at 493, 111 S.Ct. at 1470, quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (Carrier ). "[C]onstitutionally ineffective assistance of counsel ... is cause." McCleskey, 499 U.S. at 494, 111 S.Ct. at 1470 (internal quotation omitted and ellipses in original). "Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default." Id. Thus, counsel's ineffectiveness will constitute cause only if it amounts to an "independent constitutional violation." Coleman, 501 U.S. at 755, 111 S.Ct. at 2567.
 
 
 10
 If Bonin can establish cause, he then must demonstrate "actual prejudice resulting from the errors of which he complains." McCleskey, 499 U.S. at 494, 111 S.Ct. at 1470 (internal quotation omitted). Even if Bonin cannot show cause and prejudice, we may consider the merits of his claims if failure to do so would result in a miscarriage of justice. Schlup, --- U.S. at ---- - ----, 115 S.Ct. at 863-64. Such injustice occurs where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at ----, 115 S.Ct. at 864, quoting Carrier, 477 U.S. at 496, 106 S.Ct. at 2649; see also Schlup, --- U.S. at ----, 115 S.Ct. at 867 (adopting Carrier standard).
 
 A.
 
 11
 Bonin argues that he failed to raise Claims 1-10 in his first habeas petition because he was denied effective counsel at his first appeal as of right in the state court, which he argues includes both direct appeal and habeas review, as he had the same counsel during both proceedings. Bonin therefore argues that this is his first opportunity to assert ineffective assistance of his counsel on direct appeal in state court. See Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (defendant has constitutional right to counsel at trial and through direct appeal).
 
 
 12
 Bonin alternatively characterizes his argument as ineffective assistance on the part of his appellate counsel and on the part of his first habeas counsel, although they were the same. He bases his argument on the contention that state law extends the Sixth Amendment right to effective assistance of counsel on direct appeal to first habeas proceedings. See In re Clark, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993) (Clark ). Clark, however, recognizes only a state-law right to competent counsel in a habeas corpus proceeding. See id. at 780, 21 Cal.Rptr.2d 509, 855 P.2d 729 ("Regardless of whether a constitutional right to counsel exists, a petitioner who is represented by counsel when a petition for writ of habeas corpus is filed has a right to assume that counsel is competent and is presenting all meritorious claims."). We and the Supreme Court repeatedly have held that there is no constitutional right to effective assistance of counsel in habeas corpus cases. See, e.g., Coleman, 501 U.S. at 755, 111 S.Ct. at 2567-68; Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987); Bonin I, 999 F.2d at 429; Harris v. Vasquez, 949 F.2d 1497, 1513-14 (9th Cir.1991), cert. denied, 503 U.S. 910, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992). Bonin therefore cannot show cause by alleging that his first habeas counsel performed ineffectively in failing to allege the ineffectiveness of his appellate counsel in the first set of habeas petitions. His counsel's failure to raise the issue of his own ineffectiveness on appeal did not violate Bonin's rights under the Sixth Amendment.
 
 
 13
 To the extent that Bonin argues that his appellate counsel was ineffective, this claim is barred for failure to include it in the first federal habeas petitions. Jeffers v. Lewis, 68 F.3d 299, 300 (9th Cir.) (en banc) (Jeffers ), cert. denied, --- U.S. ----, 116 S.Ct. 36, 132 L.Ed.2d 917 (1995); see also McCleskey, 499 U.S. at 489, 111 S.Ct. at 1467-68 (claim barred where petitioner could have discovered underlying facts prior to filing first petition). Bonin unsuccessfully argues that the concerns over never-ending appeals discussed in Bonin I are not implicated here because the Sixth Amendment right to counsel attaches only to claims available at the time of the first effective challenge to the state conviction in the state reviewing court. Again, Bonin essentially argues that he had the right to effective counsel on his first set of federal habeas petitions, because that was the first opportunity he had to challenge his appellate counsel's performance.
 
 
 14
 Although Bonin asserts that Coleman left open this issue, Bonin I and a plurality of the Ninth Circuit already have answered it in the negative. See Jeffers, 68 F.3d at 300 (plurality) (stating that there is "no Sixth Amendment right to counsel during [a] state habeas proceeding[ ] even if that was the first forum in which [petitioner] could challenge constitutional effectiveness"), citing Bonin I, 999 F.2d at 429. Had Bonin properly raised the alleged ineffectiveness of appellate counsel in his first federal habeas corpus petitions, the district court could have made any adjustment in Bonin's representation for this claim, if necessary, to evaluate it. What Bonin cannot do is wait until now to assert his appellate counsel's ineffectiveness.
 
 
 15
 Bonin next argues that cause is established because he was deprived of due process during his first habeas corpus proceedings due to his counsel's lack of diligence. In Bonin I, Bonin's counsel requested to be removed because of a possible conflict created by arguing that his own ineffectiveness in representing Bonin during his habeas corpus proceedings caused Bonin's failure to include all of his claims in his first petition. Bonin also argued that Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir.1986), cert. denied, 481 U.S. 1023, 107 S.Ct. 1911, 95 L.Ed.2d 516 (1987), established a constitutional right, rooted in the Fifth Amendment's Due Process Clause, to effective appointed counsel in complex habeas corpus cases. Bonin I, 999 F.2d at 428. Bonin I held that although there is no constitutional right to the appointment of counsel in habeas corpus cases, petitioners do have a right to due process in habeas corpus proceedings, which may require counsel be appointed. Id. at 429. Bonin now carries that argument one giant step further by contending that his counsel's ineffectiveness on direct appeal resulted in a Fourteenth Amendment due process violation.
 
 
 16
 Bonin has not demonstrated an "independent constitutional violation" required by McCleskey and Coleman to show cause. In the abstract, Bonin argues that a due process violation resulting from the lack of counsel in habeas corpus proceedings may demonstrate cause for failure to raise all discoverable claims in a first habeas corpus petition. Under the circumstances presented here, however, Bonin is again attempting to equate the Sixth Amendment right to effective assistance of counsel with the Fourteenth Amendment due process right. He essentially argues that the Fourteenth Amendment violation is his ineffective assistance of counsel. See Bonin I, 999 F.2d at 429 (Bonin "is in essence [attempting] to include Sixth Amendment rights within the Due Process Clause"). Although not stated explicitly in Bonin I, we now hold that ineffective assistance of counsel in habeas corpus proceedings does not present an independent violation of the Sixth Amendment enforceable against the states through the Due Process Clause of the Fourteenth Amendment. To recognize such a claim would allow the Fourteenth Amendment to "swallow the rule" that there is no constitutional right to effective assistance of counsel in habeas corpus proceedings. See id. at 430. If Bonin believed he was denied due process in his appeals before the state court, he could have raised that claim in his first set of habeas corpus petitions. Bonin, however, represented to the district court that his first petition was " 'professionally and capably prepared and ... fully comprehensive,' and that he was not keeping claims 'in his hip pocket.' " Bonin II, 59 F.3d at 845.
 
 
 17
 Claims 1-10 rest on facts discoverable at the time Bonin filed his first set of federal habeas corpus petitions and Bonin presents no valid reason why he could not have raised these claims at that time, especially considering that Bonin has the same counsel now as he had then. As the district court found, all of the facts underlying Bonin's claims, including those related to his arguments concerning the testimony of codefendants Munro and Miley, were apparent from the record. Because Bonin cannot demonstrate cause, we need not consider whether he suffered actual prejudice as a result of his counsel's alleged shortcomings.
 
 
 18
 Alternatively, Bonin argues that failure to reach the merits of his claims would result in a fundamental miscarriage of justice. There is no serious question of Bonin's guilt, nor does he press this issue diligently. See Bonin II, 59 F.3d at 836 (applying prejudice standard for cases in which there is " 'overwhelming evidence of guilt,' " quoting United States v. Coleman, 707 F.2d 374, 378 (9th Cir.), cert. denied, 464 U.S. 854, 104 S.Ct. 171, 78 L.Ed.2d 154 (1983)). No fundamental miscarriage of justice would occur from denying Bonin's petition as procedurally barred. See McCleskey, 499 U.S. at 502, 111 S.Ct. at 1474-75.
 
 B.
 
 19
 In Claim 11, Bonin argues that his fourteen-year confinement on death row constitutes cruel and unusual punishment in violation of the Eighth Amendment. Bonin's state convictions became final in 1982 and 1983, and his automatic direct appeals were exhausted in 1988 and 1989. Thus, Bonin has expended at least seven years pursuing collateral attacks on his state convictions. In McKenzie v. Day, 57 F.3d 1461 (9th Cir.) (McKenzie ), adopted en banc, 57 F.3d 1493 (9th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 1840, 131 L.Ed.2d 846 (1995), we held that condemned prisoners are not entitled to a stay of execution because of delay caused by their own collateral attacks in federal court. Id. at 1467. Whether such attacks have some merit or valid legal basis is not relevant to this conclusion. See id. at 1465 (rejecting argument that death row prisoner failed to raise Lackey v. Texas, --- U.S. ----, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1995), claim in first habeas petition because it lacked merit). As in McKenzie, Bonin could have raised this claim in his first habeas corpus petition filed in the district court in 1992, at which time Bonin had been confined for ten years. Bonin offers no reason for not raising this claim earlier. We therefore hold that this claim is barred under McCleskey for failing to show cause.
 
 C.
 
 20
 Bonin's only argument not barred under McCleskey is that the State violated his Eighth and Fourteenth Amendment rights by sending notice of a hearing to set the date of his execution prior to the day we issued our mandate in Bonin II. Bonin contends that, because the federal district court's stay of execution pending appeal was still in effect, state law prohibited any action related to his execution. By failing to follow its own procedures, Bonin argues, the State violated his right to the uniform and predictable application of the laws guaranteed by the Fourteenth Amendment.
 
 
 21
 We issued the mandate in Bonin II on January 16, 1996, following the Supreme Court's denial of Bonin's petition for a writ of certiorari on January 8, 1996. On January 9, 1996, the Los Angeles County Superior Court calendared a hearing for January 19, 1996, at which time Bonin's execution date was set. Also on January 9, the Orange County Superior Court similarly calendared January 22, 1996, for a hearing for the setting of Bonin's execution date. Bonin asserts that these actions, which occurred prior to January 16, 1996, violated the federal stay of execution entered on December 30, 1992. The stay states that it is to "remain in effect until the Ninth Circuit Court of Appeals acts upon the appeal or this Order."
 
 
 22
 Even if the stay were in effect on January 9, 1996, and even if the Los Angeles and Orange County Superior Courts did not follow California procedure, Bonin could not present a cognizable Fourteenth Amendment claim. See Moran v. Godinez, 57 F.3d 690, 698 (9th Cir.1994) (Moran ) (no federally recognized liberty interest where no substantive right protected by state law procedures), cert. denied, --- U.S. ----, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995).
 
 Section 2251 of Title 28 states:
 
 23
 A justice or judge of the United States before whom a habeas corpus proceeding is pending, may ... stay any proceeding against the person detained in any State court ... for any matter involved in the habeas corpus proceeding.
 
 
 24
 After the granting of such a stay, any such proceeding in any State court ... shall be void.
 
 
 25
 "Any such proceeding" refers back to a proceeding "for any matter involved in the habeas corpus proceeding." The parties vigorously debate whether merely mailing notices of the January 19 and 22 hearings constitutes a "proceeding" under section 2251. For purposes of this appeal only, we assume that it does, and that Bonin's execution date was set in violation of state law, which requires 10 days notice before the session of court at which the date of execution will be set. California Rules of Court 490(a).
 
 
 26
 Federal habeas corpus relief does not lie for errors of state law, unless the error amounts to a deprivation of the petitioner's constitutional rights. See Estelle v. McGuire, 502 U.S. 62, 67-69, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); Campbell v. Blodgett, 997 F.2d 512, 522 (9th Cir.1992), aff'd on reh'g en banc, 18 F.3d 662 (9th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 1337, 127 L.Ed.2d 685 (1994); Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir.1991); see also 28 U.S.C. § 2254(a). The violation of state law alleged here does not constitute a violation of the Fourteenth Amendment because there is no violation of a substantive interest to which Bonin has a legitimate claim of entitlement. See Moran, 57 F.3d at 698, citing Olim v. Wakinekona, 461 U.S. 238, 250, 103 S.Ct. 1741, 1747-48, 75 L.Ed.2d 813 (1983) (Olim ). "Only the denial or misapplication of state procedures that results in the deprivation of a substantive right will implicate a federally recognized liberty interest." Moran, 57 F.3d at 698; cf. Sandin v. Conner, --- U.S. ----, ----, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995) (constitutionally protected liberty interests contained in prison regulations generally limited to freedom from restraint). Because California provided Bonin constitutionally adequate procedures in setting the date of his execution, any violation of state law did not result in the deprivation of a substantive right. Moran, 57 F.3d at 698; see also Olim, 461 U.S. at 250, 103 S.Ct. at 1747-48 (stating that "[p]rocess is not an end in itself"); Johnson v. Arizona, 462 F.2d 1352, 1353 (9th Cir.1972) (rules of sentencing adopted by state courts do not raise constitutional issues which may be reached by habeas proceedings).
 
 D.
 
 27
 Finally, Bonin contends that no final judgment ever issued in his first set of habeas corpus petitions pursuant to Federal Rule of Civil Procedure 58. He therefore contends that the federal courts have never finally ruled on whether his appellate counsel's ineffectiveness constitutes cause under McCleskey for the purpose of amending his first federal habeas corpus petitions. See Bonin I, 999 F.2d at 432 (observing that counsel's ineffectiveness never raised before the district court in the Los Angeles case as a reason for granting Bonin's motion to amend). In Bonin II, however, Bonin challenged the district court's decisions denying his motions to amend the Orange and Los Angeles County petitions. As to the Orange County petition, we held that the district court did not abuse its discretion in deciding that all of the new claims Bonin presented in his amended petitions "could have been raised when Bonin initially filed his petition." Bonin II, 59 F.3d at 845. The district court based its decision, in part, on Bonin's admission two months before filing the amended petition that he was not keeping claims "in his hip pocket." Id.
 
 
 28
 As to the Los Angeles County petition, we held that the district court did not abuse its discretion by denying Bonin's December 23, 1991, motion to amend as untimely filed. Id. at 846 (recognizing that Bonin filed the amended petition seven months late). We also held that the district court based its decision on proper considerations, including Bonin's failure to provide a satisfactory explanation of his failure to develop his claims fully in his first petition. See id. at 845-46. Bonin filed a second motion to amend the Los Angeles petition on August 18, 1992. We held that the district court did not abuse its discretion in denying that motion, which was filed " 'long after the work in the case had concluded and seven months after the Court took the petition under submission.' " Id. at 846, quoting Bonin v. Vasquez, 807 F.Supp. at 587.
 
 
 29
 Bonin is bound by Bonin II. We therefore reject his arguments that McCleskey does not bar amendments to his first set of federal habeas corpus petitions and that this is his first opportunity to raise the ineffectiveness of his appellate counsel because no final judgment was issued on his first set of federal habeas petitions.
 
 
 30
 Because we hold that Bonin's claims are either barred by McCleskey or lack merit, we affirm the district court's orders denying Bonin's petitions for habeas corpus relief, and we deny Bonin's application to vacate his execution date and for an emergency stay of execution.
 
 III
 
 31
 We now turn to Bonin's section 1983 action, in which he argues that Gomez and Calderon will violate state law and Bonin's constitutional right to choose his method of execution if they execute him as planned by lethal injection. The district court exercised jurisdiction pursuant to 28 U.S.C. § 1343. Its decision was based on conclusions of law, which we review de novo. Price v. United States Navy, 39 F.3d 1011, 1021 (9th Cir.1994). Because the district court's order shows its bases for dismissing Bonin's action, we need not address Bonin's argument that the court's failure to provide him a transcript of the February 20, 1996, hearing deprived him of due process.
 
 
 32
 Bonin's claim is premised on his alleged state-created liberty interest in choosing between lethal injection and the gas chamber. California law, however, guarantees no such choice. California Penal Code § 3604 provides, in part:
 
 
 33
 (a) The punishment of death shall be inflicted by the administration of a lethal gas or by an intravenous injection of a substance or substances in a lethal quantity sufficient to cause death....
 
 
 34
 (b) Persons sentenced to death ... shall have the opportunity to elect to have the punishment imposed by lethal gas or lethal injection....
 
 
 35
 ...
 
 
 36
 (d) Notwithstanding subdivision (b), if either manner of execution described in subdivision (a) is held invalid, the punishment of death shall be imposed by the alternative means specified in subdivision (a).
 
 
 37
 Use of lethal gas under California procedure was invalidated as violative of the Eighth Amendment in Fierro v. Gomez, 77 F.3d 301 (9th Cir.1996). Fierro concludes that "execution by lethal gas under the California protocol is unconstitutionally cruel and unusual and violates the Eighth and Fourteenth Amendments." Id. Fierro also permanently enjoined Gomez and Calderon from administering lethal gas under the California protocol against the plaintiffs in that action. Because the Ninth Circuit has now affirmed the district court's conclusions in Fierro, Bonin cannot argue that use of lethal gas upon him has not been "held invalid" under section 3604(d).
 
 
 38
 It follows that Bonin has no state-created, constitutionally protected liberty interest to choose his method of execution. Section 3604(d) does not guarantee Bonin a choice under these circumstances, thus it does not create a constitutionally protected liberty interest. See Toussaint v. McCarthy, 801 F.2d 1080, 1095 (9th Cir.1986) (where statute created only possibility of early release it did not create constitutionally protected liberty interest), cert. denied, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). Bonin therefore suffers no due process violation.
 
 
 39
 The Supreme Court has stated that as long as the method selected is not cruelly inhumane, it does not violate the Eighth Amendment. Gregg v. Georgia, 428 U.S. 153, 175, 96 S.Ct. 2909, 2926, 49 L.Ed.2d 859 (1976). Because Bonin does not argue that execution by lethal injection is unconstitutional, we conclude the method of execution to be implemented on February 23, 1996, is applied constitutionally. We therefore deny Bonin's application for a temporary restraining order because his claim for section 1983 relief has no merit.
 
 
 40
 AFFIRMED; STAY PETITIONS DENIED.