**Thomas NEVIUS, Petitioner,**

v.

**George SUMNER, Director, Department of Prisons, et al., Respondents.**

**Thomas NEVIUS, Petitioner,**

v.

**E.K. McDANIEL, Warden, Nevada State Prison at Ely, et al., Respondents.**
**(Two Cases.)**

**CA Nos. 86–2878, 96–80322 and 96–99015.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 21, 1996.

Decided Dec. 11, 1996.

Michael Pescetta, Assistant Federal Public Defender, Las Vegas, NV, for petitioner.

Keith Munro, Deputy Attorney General, Carson City, NV, for respondents.

Before CANBY, BOOCHEVER and KLEINFELD, Circuit Judges.

## OPINION

CANBY, Circuit Judge:

Thomas Nevius, a Nevada state prisoner under sentence of death, brings three matters before this court. First, he appeals the district court's denial of his motion to file a petition for writ of habeas corpus. No. 96–99015. Second, he moves this court to recall its eight-year-old mandate in *Nevius v. Sumner*, 852 F.2d 463 (9th Cir.1988) ("*Nevius I*"), *cert. denied*, 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989). No. 86–2878. Third, he moves this court for authorization to file a second petition for writ of habeas corpus in the district court—an authorization now required by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(b)(3)(A).[1] No. 96–80322.

We affirm the district court's denial of Nevius' motion to file a petition for writ of habeas corpus and deny Nevius' motion to recall our mandate.[2] By separate order, however, we have granted Nevius leave to file a second petition for writ of habeas corpus.

## I.

## BACKGROUND

In 1982, Thomas Nevius, a black man, was convicted of first-degree murder and sentenced to death by an all-white jury. For a statement of the facts surrounding the mur-

der, see *Nevius v. State*, 101 Nev. 238, 699 P.2d 1053, 1054–57 (1985).

At trial, the prosecutor used his peremptory challenges to remove all of the prospective minority jurors. In response to defense objection, the prosecutor voluntarily placed in the record his ostensibly race-neutral reasons for challenging the minority jurors. According to one of Nevius' trial counsel, it was common knowledge at the time that the district attorney's office engaged in a practice of removing black jurors in cases involving black defendants, but defense counsel did not obtain or present evidence of that practice to bolster Nevius' claim that the prosecutor's use of his peremptory challenges violated *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), and our decision in *Weathersby v. Morris*, 708 F.2d 1493 (9th Cir.1983), *cert. denied*, 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984).[3]

Some months after trial, one of Nevius' trial counsel had a conversation with the prosecutor about Nevius' case. According to trial counsel, the prosecutor said at some point in the conversation: "[Y]ou don't think I wanted all those niggers on my jury, did you?" Nevius' counsel did not, however, seek to place this statement before the trial court in a motion for new trial, nor did counsel attempt to place the statement before the Nevada Supreme Court, in which Nevius' direct appeal was then pending.

On direct appeal, the Nevada Supreme Court affirmed Nevius' conviction and sentence. The court held that Nevius' *Swain* claim was insufficiently supported, because, contrary to the requirements of *Swain*, it relied solely on the exclusion of minority jurors in Nevius' own case. The court also held that the prosecutor's asserted reasons for challenging all of the prospective minority

---

1. Nevius does not dispute that the general habeas corpus provisions of the Antiterrorism and Effective Death Penalty Act are in effect for the purposes of his present habeas petition.

2. Nevius' motion to file a post-argument supplemental brief is granted and the brief is ordered filed. In view of our disposition of Nevius' appeal and motion to recall the mandate, no response from the State is necessary.

3. Nevius' trial and direct appeal were concluded before the United States Supreme Court decided *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which held that racial discrimination in peremptory challenges could be established on the record of a single case. The *Batson* ruling is not retroactive and therefore does not apply to Nevius in these collateral proceedings. *See Allen v. Hardy*, 478 U.S. 255, 260–61, 106 S.Ct. 2878, 2881–82, 92 L.Ed.2d 199 (1986).

jurors were proper. *Nevius,* 699 P.2d at 1058–59, 1059 n. 3.

Following the Nevada Supreme Court's denial of his petition for rehearing, Nevius attempted to obtain collateral relief in state court. The state district court summarily dismissed Nevius' petition for writ of habeas corpus on the merits and because it was filed in the wrong venue. Nevius then filed another petition, correcting the venue problem. That petition was also summarily dismissed on the merits.

Nevius then appealed the denial of his two post-conviction petitions to the Nevada Supreme Court and also petitioned for a writ of mandamus. The Nevada Supreme Court dismissed his appeals and denied his petition for a writ of mandamus.

The same day that the Nevada Supreme Court rejected his appeals and mandamus petition, Nevius filed a petition for writ of habeas corpus with the United States District Court for the District of Nevada. In his petition, Nevius sought discovery to establish that the prosecutor had made the statement about not wanting "all those niggers on my jury." [4] The state opposed discovery on the ground that counsel—the same counsel who had represented Nevius at trial, on direct appeal, and in all of the state post-conviction proceedings—had waived reliance on that evidence by failing to assert it in the earlier state proceedings. No claim of ineffective assistance of trial and appellate counsel was raised before the district court. The district court denied Nevius' motion for discovery without holding an evidentiary hearing, and denied Nevius' petition for writ of habeas corpus.

On appeal, we affirmed the district court's denial of Nevius' petition on the ground that the prosecutor's reasons for challenging all of the minority jurors at Nevius' trial satisfied the requirements of *Weathersby. Nevius I,* 852 F.2d at 467–68. We noted, however, the existence of "serious allegations" concerning the prosecutor's statements that, if proven, "might have presented in a different light the factual issues concerning the motivation of the prosecutor in exercising his peremptory challenges." *Id.* at 469–70. Because those statements were not in the record, however, they were not before us. We held that they would have to be presented to the state courts and a record made before we could consider them. *Id.*

Following our decision, Nevius filed a petition for writ of habeas corpus in the state district court, in which he attempted to use the prosecutor's statements to bolster his *Swain–Weathersby* claim. Although ordered to answer the petition by August 23, 1989, the state did not file an answer, and took no action with respect to the petition, for almost five years. Then, on April 11, 1994, the state filed a motion to dismiss the petition on procedural grounds. Without conducting an evidentiary hearing, the state district court then denied Nevius' petition.

Nevius appealed the state district court's decision to the Nevada Supreme Court. He also filed an original petition for habeas corpus in that court; it raised similar issues and was consolidated with his appeal. In addition to the *Swain–Weathersby* claim, the appeal and petition raised claims of ineffectiveness of counsel at trial and on appeal, as well as one claim that was entirely new: the reasonable-doubt instruction given at Nevius' trial was unconstitutional in light of the Supreme Court's decision in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The Nevada Supreme Court held that all claims were procedurally defaulted either because they had been raised before or because they were new claims that ought to have been raised in previous proceedings. To excuse the default, Nevius was required to show cause and prejudice, and he could not show prejudice. The primary claim of ineffective assistance of counsel was in failing to make an issue of the prosecutor's comments, but the Nevada Supreme Court ruled that counsel's statements that the comments had been made were not credible and would have made no difference in the result. The court further ruled that the issue of the reasonable-doubt instruction should have been raised earlier, and also stated that the

---

4. One of Nevius' trial counsel asserts that, when he told the state prosecutor that his challenge of the minority jurors was an issue in Nevius' feder-

al habeas petition, the prosecutor responded: "I did a good job of that, didn't I?"

instruction was not unconstitutional. The Nevada Supreme Court stated that it discussed the merits of Nevius' claims "strictly for the purpose of demonstrating that appellant cannot overcome his procedural defaults by a showing of actual prejudice." *Nevius v. McDaniel,* No. 29028, Order Dismissing Appeal and Denying Petition for Writ of Habeas Corpus, at 3–4 (Nev. Oct. 9, 1996).

While Nevius' consolidated appeal and petition were still pending in the Nevada Supreme Court, Nevius returned to the United States District Court and moved for leave to file a petition for habeas corpus.[5] The motion acknowledged that, pursuant to the new 28 U.S.C. § 2244(b)(3), Nevius would have to obtain leave of this court to file a second federal habeas petition. Nevius argued in his motion, however, that under the principles that this court established in *Deutscher v. Angelone,* 16 F.3d 981 (9th Cir.1994), his second petition should be treated as his first petition because his counsel filed the first petition without Nevius' authorization.

On August 30, 1996, Nevius filed in this court a motion to recall our mandate in *Nevius I.* Nevius argues that recalling the mandate is necessary to prevent injustice in his case, because, had Nevada not ignored for nearly five years the state district court's order to answer his 1989 state habeas petition, he could have returned to this court before the Supreme Court decided *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). *McCleskey*'s limits on successive habeas petitions thus would not have prevented us from considering the merits of Nevius' second habeas petition. Nevius would therefore have us recall our mandate and deal with his present claims as part of his first federal habeas appeal.

On September 3, 1996, the district court denied Nevius' motion to file a petition for writ of habeas corpus. The district court also denied a certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Fed.

R.App.P. 22(b), both as amended by the Antiterrorism and Effective Death Penalty Act of 1996. Nevius filed a notice of appeal and now urges us to issue a certificate of appealability and address on appeal his contention that his petition should be filed as a first petition pursuant to *Deutscher.*

Nevius has also filed in this court a motion for authorization to file a second petition for writ of habeas corpus in the district court, pursuant to 28 U.S.C. § 2244(b)(3)(A). Nevius raises two claims in the motion. First, he contends that we should permit him to argue that the reasonable-doubt instruction given at his trial was unconstitutional in light of *Cage* because *Cage* was decided after his first state and federal collateral proceedings and it embodies, in the words of § 2244(b)(2)(A), a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Second, he argues that the Sixth Amendment's guarantee of effective assistance of counsel at trial and on direct appeal and the Fifth Amendment's guarantee of due process require us to permit him to challenge the effectiveness of his trial and appellate counsel despite the "new claim" procedural bar of 28 U.S.C. § 2244(b)(2).

The state trial court had issued a warrant for Nevius' execution during the week of September 10, 1996, but it was stayed by the Nevada Supreme Court while it entertained Nevius' most recent appeal and petition. The warrant expired while stayed, and the state trial court has not yet issued a new warrant, although a status conference is set for December 12, 1996.

## II.

### NEVIUS' APPEAL FROM THE DISTRICT COURT'S DENIAL OF HIS MOTION TO A FILE PETITION FOR WRIT OF HABEAS CORPUS

Nevius attempted to file in the district court a petition for habeas corpus raising the

---

5. Nevius' second federal habeas petition raises four claims: (1) that his conviction and death sentence are constitutionally invalid because of the Nevada district attorney's practice of systematically excluding prospective minority jurors from criminal juries involving minority defendants; (2) that the discriminatory exclusion of all minorities from his capital jury renders his con-

viction and sentence constitutionally invalid; (3) that his trial and appellate counsel's failure to provide effective assistance of counsel renders his conviction and sentence constitutionally invalid; and (4) that he was deprived of due process of law by the use of an unconstitutional reasonable-doubt jury instruction at his trial.

claim that his murder conviction and death sentence must be reversed on the ground that his trial and appellate counsel were constitutionally ineffective. The district court refused to permit the filing because it was Nevius' second federal habeas petition, and Nevius had not secured the authorization of this court to file it, as now required by 28 U.S.C. § 2244(b)(3)(A).

### A. Appealability

■ Nevius seeks to appeal on the ground that the district court erred in failing to treat his petition as a first petition under the principles that this court established in *Deutscher v. Angelone*, 16 F.3d 981 (9th Cir. 1994). The district court, however, declined to grant a certificate of appealability, so Nevius cannot pursue his appeal unless we grant one. *See* 28 U.S.C. § 2253(c). We may issue such a certificate "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). At least two circuits have determined that this standard is the same as the earlier standard required for a certificate of probable cause. *Reyes v. Keane*, 90 F.3d 676, 680 (2nd Cir.1996); *Lennox v. Evans*, 87 F.3d 431, 433 (10th Cir.1996), *petition for cert. filed*, (Oct. 21, 1996) (No. 96–6621). We have stated in dicta that the new standard is stricter than the old one. *Williams v. Calderon*, 83 F.3d 281, 286 (9th Cir.1996). We need not resolve that question, however, because we have concluded that Nevius' presentation of his *Deutscher* claim constitutes a "substantial showing" under the stricter standard, even though the claim ultimately fails on the merits. We therefore grant the certificate of appealability. .

### B. Nevius' *Deutscher* Argument

*Deutscher* was also a death penalty case. There the petitioner filed a second federal habeas corpus petition and sought to raise a claim of ineffective assistance of counsel at trial. *Deutscher*, 16 F.3d at 982–83. After two of our decisions and two remands from the Supreme Court, the issue became whether Deutscher's claims were precluded by *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), and *Sawyer v.*

*Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), because the claims were presented in a second habeas petition. *Deutscher*, 16 F.3d at 982–83.

We held that Deutscher's claims were not precluded because his second petition had to be treated as his first petition. *Id.* at 983–84. The reason was that his first petition had never been authorized by Deutscher, as the district court found when the case was remanded for a hearing on that point. "Deutscher never signed or otherwise verified the petition, and it was filed in [Deutscher's lawyer's] name and signed by him." *Id.* at 984. The lawyer was the same ineffective counsel who had represented Deutscher at trial and on appeal. *Id.* The fact that his lawyer had filed the petition raised a presumption that it was authorized and that Deutscher had been fully informed of the claims it raised, but that presumption had been rebutted to the satisfaction of the district court. *Id.* We summarized:

> ... [Deutscher's lawyer] confirmed that he filed the petition without notifying Deutscher or seeking his authorization. Ahlswede mailed Deutscher a copy of the petition after filing it, but he never explained the nature of federal habeas corpus proceedings, the risk that claims not raised might be barred as abuse of the writ, or the appropriateness of having other counsel file the petition. The record satisfies us that the district court properly found that Deutscher did not understand the significance of federal habeas proceedings and did not authorize Ahlswede to file the federal habeas petition.

*Id.*

■ We conclude that Nevius' situation is wholly distinguishable from that in *Deutscher*. In the first place, Nevius authorized his first habeas petition. As the district court recited:

> The record reflects that Nevius signed a verification to his original federal petition for habeas relief, stating under penalty of perjury "that he has read the foregoing legal document and knows the contents thereof to be true of his own personal knowledge except for those matters therein stated upon information and belief and

as to those matters, he believes them to be true." Thereafter, on February 20, 1986, this court entered its order directing Nevius to file an amended petition including "any possible constitutional error entitling Petitioner to habeas corpus relief failing which the Petitioner shall be presumed deliberately to have waived his right to complain of any constitutional errors other than those set forth in the petition." Subsequently Nevius filed a supplemental petition in response to that order. That supplemental petition was signed by Nevius by declaration in which he stated, "I declare, certify, and verify and state under penalty of perjury that the foregoing is true and correct."

In addition on May 28, 1996, during a hearing before the state district court on his Second Petition for Writ of Habeas Corpus filed June 7, 1989, Nevius testified that he authorized his counsel John Graves and Cal Potter to proceed with his first federal petition for writ of habeas corpus. The only evidence offered to contradict this clear authorization is the affidavit of Potten in which he asserts that he has no recollection whether the issue of ineffective assistance of counsel was raised with Nevius.

*Nevius v. McDaniel,* No. CV–N–96–552 HDM, Order Denying Motion to File Petition for Writ of Habeas Corpus, at 3–4, (D.Nev. Sept. 3, 1996) (citations omitted).

In the face of this record, Nevius necessarily argues that his bare authorization of the first habeas petition is not enough. He first seizes upon the statements in *Deutscher* that counsel had "never explained the nature of federal habeas corpus proceedings, the risk that claims not raised might be barred as an abuse of the writ, or the appropriateness of having other counsel file the petition." *Deutscher,* 16 F.3d at 984. Nevius argues that his counsel did not explain any of those things to him, either.

These comments from *Deutscher,* however, were uttered in the context of a petition that had been filed without the knowledge or consent of the petitioner. *Id.* Deutscher might have been held to the consequences of the petition despite that fact, if he had ratified the action in full knowledge of the consequences. We do not read *Deutscher,* however, as holding that a petitioner who authorizes and signs his own petition is entitled to have the petition disregarded if he later makes a showing that he was not fully informed of its consequences by his attorney. Such a rule, we believe, would impermissibly undermine *McCleskey, Sawyer,* and the newly amended Section 2244(b).

Nevius next argues that his first habeas petition should not count, per *Deutscher,* because his counsel were incapable of acting as his agents by reason of the conflict that precluded them from asserting their own ineffectiveness at trial and on appeal. *See Deutscher,* 16 F.3d at 984. According to Nevius, his counsel, as agents, were without authority to default any of his substantive claims, particularly in light of their conflict of interest.

Nevius' first proposition—that an attorney is not authorized to default a client's claim— is refuted by *Coleman v. Thompson,* 501 U.S. 722, 755–57, 111 S.Ct. 2546, 2567–69, 115 L.Ed.2d 640 (1991). *Coleman* held that an attorney's failure to appeal a state trial court's ruling, in collateral proceedings, rejecting an ineffective assistance claim defaulted that claim for purposes of federal review. *Id.* The attorney's error was not "cause" to excuse the default, because it occurred in proceedings in which the defendant had no constitutional right of counsel. *Id.* Nevius' counsel also defaulted in collateral proceedings in which there is no constitutional right to counsel.

Nevius contends that *Coleman* does not preclude his argument, however, because in *Coleman* the issue of ineffective assistance of counsel at trial at least had been addressed by the state trial court in collateral proceedings. Nevius points out that he has never had a ruling on the merits regarding the ineffectiveness of his counsel in pursuing his *Swain* claim. He also points out that the Supreme Court in *Coleman* found it unnecessary to decide whether an exception to its rule must be made when "state collateral review is the first place a prisoner can present a challenge to his conviction." *Coleman,* 501 U.S. at 755, 111 S.Ct. at 2567. Because

his trial counsel represented him in his first state and federal collateral proceedings, they could not raise the issue of their own incompetence. *See United States v. Del Muro,* 87 F.3d 1078, 1080–81 (9th Cir.1996) (reversible error for trial court to require trial counsel to represent defendant in bringing motion for new trial on ground of counsel's own ineffectiveness at trial). Therefore, Nevius argues, his second state and federal habeas proceedings were the first ones in which he could raise his constitutional claims of ineffective assistance of counsel at trial and on appeal. He should therefore be permitted his one chance to raise his ineffective assistance claim.

Nevius' argument is not without force, but it has been foreclosed by our decisions in *Bonin v. Calderon,* 77 F.3d 1155 (9th Cir.) (*"Bonin III"*), *cert. denied,* — U.S. —, 116 S.Ct. 980, 133 L.Ed.2d 899 (1996), and *Moran v. McDaniel,* 80 F.3d 1261 (9th Cir. 1996). In *Bonin III,* we held a claim of ineffective assistance of counsel on direct appeal to be defaulted for not being raised in Bonin's first federal habeas proceeding, even though the same counsel represented Bonin in both proceedings. *Bonin III,* 77 F.3d at 1159. We held that counsel's failure to raise the issue in the first federal habeas proceeding could not be excused by his ineffectiveness at that juncture, because there was no constitutional right to counsel in the habeas proceeding. *Id.* There was no constitutional right of counsel in such habeas proceedings even if they presented the first opportunity to raise the ineffectiveness claim. *Id.; see also Moran,* 80 F.3d at 1271 (holding that a petitioner may not avoid the rule that there is no right to effective assistance of counsel in state or federal habeas proceedings "by asserting [that] this [second] habeas proceeding was the first proceeding in which he could have raised his claim of ineffective assistance of appellate counsel").

Nevius' argument is therefore foreclosed by *Bonin III* and *Moran,* and those cases are binding on this panel.[6] If Nevius is to pursue his claim that he is entitled to raise

his ineffective assistance claim at the point when he first obtains conflict-free counsel, he must do so by seeking en banc rehearing in this court, or review by certiorari in the Supreme Court.

For the reasons explained above, the district court did not err in concluding that Nevius authorized his counsel to file his first habeas petition. As a result, Nevius' second habeas petition must be treated as such. The district court accordingly was correct to deny Nevius' motion to file a second petition on the ground that this court had not authorized its filing. *See* 28 U.S.C. § 2244(b)(3)(A).

## III.

## NEVIUS' MOTION TO RECALL THE MANDATE

Nevius contends that we must recall our mandate in *Nevius I,* issued in 1988, "to prevent injustice." We decline to recall the mandate.

### A. Our authority to recall our mandate

We held in *Zipfel v. Halliburton Co.,* 861 F.2d 565 (9th Cir.), that "the authority of a Court of Appeals to recall its mandate is clear. While the authority is not conferred by statute, it exists as part of the court's power to protect the integrity of its own processes." *Id.* at 567 (citations omitted).

▮▮▮▮ Nevertheless, our authority to recall a mandate is limited. The decision whether to exercise the power "falls within the discretion of the court, but such discretion should be employed to recall a mandate only when good cause or unusual circumstances exist sufficient to justify modification or recall of a prior judgment." *Id.* In general, we will recall a mandate only when we are animated by "an overpowering sense of fairness and a firm belief that this is the exceptional case requiring recall of the mandate in order to prevent an injustice." *Verrilli v. City of Concord,* 557 F.2d 664, 665 (9th Cir.1977); *see also Zipfel,* 861 F.2d at

---

**6.** A plurality of the en banc court in *Jeffers v. Lewis,* 68 F.3d 299, 300 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 116 S.Ct. 36, 132 L.Ed.2d

917 (1995), also rejected the claim Nevius now asserts, but the plurality opinion is not binding precedent.

567. Thus we have recalled a mandate when a subsequent "decision of the Supreme Court 'departs in some pivotal aspects' from a decision of" this court. *Zipfel,* 861 F.2d at 567 (quoting *American Iron and Steel Inst. v. EPA,* 560 F.2d 589, 596 (3d Cir.1977), *cert. denied,* 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978)).

### B. Nevius' motion to recall our mandate

■ Nevius' motion suffers from the fact that it is not grounded in any real infirmity in our previous decision, either when it was entered or when it is viewed in the light of later Supreme Court decisions. Nevius wants us to recall our mandate in *Nevius I* not to nullify an erroneous decision, but to reopen the proceeding so that he may present new claims that now cannot be addressed in a subsequent petition. The reasons that those claims cannot be addressed in a second petition are that severe limits have been placed on second petitions by the Supreme Court in *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), and by Congress in the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(a), (b). To grant Nevius' motion simply to avoid the effect of those two procedural bars would thoroughly undermine *McCleskey* and the Act. That we may not do.

Nevius argues, however, that recall is justified under our conventional practice because *McCleskey* "departs in some pivotal aspects from" *Nevius I. See Zipfel,* 861 F.2d at 567 (internal quotation omitted). As Nevius recognizes, *McCleskey* effectively prevents him from raising two of his strongest claims: the *Swain* claim based on the prosecutor's post-trial remarks,[7] and his ineffective assistance of counsel claim. Nevius contends that our decision in *Nevius I* conflicted with *McCleskey* because in *Nevius I* we suggested that we could consider Nevius' contentions regarding the prosecutor's statements in a second habeas proceeding after the statements had been presented to the state courts.

There is no direct conflict between *Nevius I* and *McCleskey,* however. Our statement in *Nevius I* regarding further proceedings was more guarded than Nevius now recognizes. We said:

> If there is evidence that should be presented to the state courts, then the attempt must first be made to present it there and to make a record. Only thereafter, under the appropriate procedural strictures, may the matter be addressed in federal court.

*Nevius I,* 852 F.2d at 470 (footnote omitted). It is apparent from this statement that we recognized that Nevius might well face procedural barriers in attempting to assert his new claims. We reject, therefore, Nevius' contention that, if we had anticipated *McCleskey,* we would have remanded his petition to the district court with instructions for that court to retain jurisdiction while Nevius brought his new claims or new evidence to the state courts. We had nothing in the record before us to support such a remand.

Even if we did not fully anticipate at the time of *Nevius I* the stricter standards to be imposed by *McCleskey,* that fact does not support a recall of our mandate. The alleged unfairness of which Nevius complains is simply a result of the fact that *McCleskey* is retroactive in its application to pending successive-petition cases in which a first petition preceded *McCleskey. See Harris v. Vasquez,* 949 F.2d 1497, 1512 (9th Cir.1990), *cert. denied,* 503 U.S. 910, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992). McCleskey himself had no more warning than Nevius that his first petition might bar issues attempted to be raised in later petitions, yet *McCleskey* is the law. In fact, Nevius was given a very clear warning by the district court in his first federal habeas proceeding that he would "be presumed deliberately to have waived his right to complain of any constitutional errors other than those set forth in the petition."

---

7. Nevius did attempt to use the prosecutor's statement to bolster his *Swain–Weathersby* argument in his first federal habeas petition. As noted earlier, however, we declined to assess the merits of Nevius' modified *Swain–Weathersby* claim until Nevius presented the prosecutor's statement (as well as other related statements) to the state courts and made a proper record.

Nevius argues, however, that if the state had responded promptly to the petition he filed in state court after *Nevius I*, instead of unaccountably delaying for five years, he would never have become subject to *McCleskey*. *McCleskey* was not decided until three years after we filed our opinion in *Nevius I*, and 18 months after the state district court ordered Nevada to respond to Nevius' last state habeas petition. Had Nevada responded promptly, it is *possible* that we would have been able to rule upon the merits of Nevius' new federal habeas petition before *McCleskey* came down. Even so, Nevius' claim still amounts to an assertion that retroactive application of *McCleskey* is inherently unjust—an argument foreclosed by *McCleskey* itself.

In any event, it is most unlikely that Nevius would have been able to avoid *McCleskey* no matter how prompt the state had been. We would have had to apply *McCleskey* if Nevius' case had been pending before us at the time *McCleskey* was decided. *See Harris*, 949 F.2d at 1512. Thus the state trial and supreme courts, the federal district court, and this court all would have had to dispose of Nevius' second collateral attack within 18 months after the state responded in state court. This result is unlikely in the extreme. Indeed, the state supreme court did not dismiss Nevius' final petition until nearly three years after the state responded. We do not agree with Nevius, therefore, that the state's delay has unfairly subjected him to *McCleskey* or to the Antiterrorism and Effective Death Penalty Act of 1996.

We therefore decline to recall our mandate in *Nevius I.*

### IV.

### NEVIUS' MOTION FOR LEAVE TO FILE A SECOND PETITION FOR WRIT OF HABEAS CORPUS

■ Nevius argues in his second petition for writ of habeas corpus that the reasonable-doubt instruction given at his trial was unconstitutional, and that, as a result, his petition for writ of habeas corpus must be granted unless the state affords him a new trial. Nevius acknowledges that he did not raise his reasonable-doubt claim in his first federal habeas petition. He contends, however, that 28 U.S.C. § 2244(b)(2)(A) permits him to raise that claim in a second federal habeas petition, because he has made a *prima facie* showing that the claim "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.* He finds the new rule in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), in which the Supreme Court held that due process did not permit a reasonable-doubt instruction that "suggest[s] a higher degree of doubt than is required for acquittal under the reasonable-doubt standard." *Id.* at 41, 111 S.Ct. at 329. He asserts that this rule was made retroactive by the Supreme Court in *Adams v. Evatt*, — U.S. ——, 114 S.Ct. 1365, 128 L.Ed.2d 42 (1994), which vacated a decision of the 11th Circuit holding *Cage* not to be retroactive; the decision was vacated for reconsideration in light of *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

Without intimating any view concerning the merits of Nevius' *Cage* claim, or any view regarding whether he has in fact met the requirements of 28 U.S.C. § 2244(b), we conclude that he has made "a prima facie showing that the application satisfies the requirements of this subsection." *See* 28 U.S.C. § 2244(b)(3)(C). We therefore previously issued a separate order granting Nevius leave to file a second petition for habeas corpus. *See Nevius v. McDaniel*, 104 F.3d 1120 (9th Cir. Nov. 27, 1996).

### V.

### CONCLUSION

We affirm the district court's denial of Nevius' motion to file a purported "first" petition for writ of habeas corpus. We also refuse to recall our mandate in *Nevius v. Sumner*, 852 F.2d 463 (9th Cir.1988). By separate order, however, we granted Nevius leave to file a second petition for writ of habeas corpus.

**No. 96–99015: CERTIFICATE OF APPEALABILITY GRANTED; AFFIRMED.**

NO. 86–2878: MOTION TO RECALL MANDATE DENIED.

NO. 96–80322: MOTION FOR AUTHORIZATION TO FILE PETITION FOR WRIT OF HABEAS CORPUS GRANTED BY SEPARATE ORDER.